# UNITED STATES DISCTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| ELECTRIC POWER SUPPLY ASSOCIATION, DYNEGY INC., EASTERN GENERATION, LLC, NRG ENERGY, INC., and CALPINE CORPORATION,<br><br>    Plaintiffs<br><br>          v.<br><br>ANTHONY M. STAR, in his official capacity as Director of the Illinois Power Agency, and BRIEN J. SHEAHAN, JOHN R. ROSALES, SADZI MARTHA OLIVA, MIGUEL DEL VALLE, and SHERINA MAYE EDWARDS, in their official capacities as Commissioners of the Illinois Commerce Commission,<br><br>    Defendants | Case No. 17-cv-01164<br><br>Judge Manish S. Shah<br><br>**FILED**<br>APR 1 2 2017<br>THOMAS G. BRUTON<br>CLERK, U.S. DISTRICT COURT |

## UNOPPOSED MOTION FOR LEAVE TO FILE A BRIEF *AMICI CURIAE* OF THE ENVIRONMENTAL DEFENSE FUND, CITIZENS UTILITY BOARD, ELEVATE ENERGY, AND RESPIRATORY HEALTH ASSOCIATION IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

Pursuant to Local Rule 5.6 of this Court, the Environmental Defense Fund ("EDF"), Citizens Utility Board ("CUB"), Elevate Energy, and Respiratory Health Association ("RHA") respectfully submit this Unopposed Motion for Leave to File A Brief *Amici Curiae* in Support of Defendants' Motion to Dismiss the Complaint, which was filed by and on behalf of plaintiffs Electric Power Supply Association, Dynegy Inc., Eastern Generation, LLC, NRG Energy, Inc., and Calpine Corporation ("Plaintiffs"), for failure to state a claim upon which relief can be

granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs and Defendants do not oppose this motion.

As explained in greater detail in the proposed brief *amici curiae* attached to this Motion as "Exhibit A," the proposed *amici* are each non-profit entities that address public interest issues and conduct significant advocacy, outreach, and educational activities around energy, environmental, and health issues within the State of Illinois. *Amici* each actively participated in the legislative discussions around the passage of the Future Energy Jobs Act, a provision of which is at issue in the instant proceeding.

*Amici* respectfully request that the Court grant this Motion because the public interests that *amici* represent will be significantly affected by resolution of this matter and *amici* offer unique perspectives regarding, *inter alia*, the environment, public health, and ratepayer investment that the Court could consider in its judgment on whether to grant or deny Plaintiff's Motion to Dismiss. Furthermore, the granting of this Motion will not prejudice any party to the proceeding, and counsel for Plaintiffs and Defendants have consented to the filing of the proposed brief *amici curiae*.

For these reasons, the Environmental Defense Fund, Citizens Utility Board, Elevate Energy, and Respiratory Health Association respectfully request that the Court grant this Motion.

Dated: April 12, 2017

Kristin Munsch
Citizens Utility Board
Deputy Director
309 W. Washington Street, Suite 800
Chicago, Illinois 60606
(312) 263-4282
kmunsch@citizensutilityboard.org

**CERTIFICATE OF SERVICE**

The undersigned certifies that all counsel of record in this proceeding were served with a copy of this document via electronic mail on April 12, 2017.


Kristin Munsch
Citizens Utility Board
Deputy Director
309 W. Washington Street, Suite 800
Chicago, Illinois 60606
(312) 263-4282
kmunsch@citizensutilityboard.org

# EXHIBIT A

## UNITED STATES DISCTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ELECTRIC POWER SUPPLY ASSOCIATION, DYNEGY INC., EASTERN GENERATION, LLC, NRG ENERGY, INC., and CALPINE CORPORATION, | ) ) ) ) ) | |
| Plaintiffs | ) ) | Case No. 17-cv-01164 |
| v. | ) ) | Judge Manish S. Shah |
| ANTHONY M. STAR, in his official capacity as Director of the Illinois Power Agency, and BRIEN J. SHEAHAN, JOHN R. ROSALES, SADZI MARTHA OLIVA, MIGUEL DEL VALLE, and SHERINA MAYE EDWARDS, in their official capacities as Commissioners of the Illinois Commerce Commission, | ) ) ) ) ) ) ) ) ) | |
| Defendants | ) | |

**ENVIRONMENTAL DEFENSE FUND, CITIZENS UTILITY BOARD, ELEVATE ENERGY, AND RESPIRATORY HEALTH ASSOCIATION'S BRIEF AS AMICI CURIAE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

The Environmental Defense Fund ("EDF"), Citizens Utility Board ("CUB"), Elevate Energy, and Respiratory Health Association ("RHA") respectfully submit this brief as *amici curiae* in support of Defendants' motion to dismiss the Complaint filed by Electric Power Supply Association, Dynegy Inc., Eastern Generation, LLC, NRG Energy, Inc., and Calpine Corporation ("Plaintiffs") for failure to state a claim upon which relief can be granted.

## I.   BACKGROUND

In the federal system, states have the principal responsibility and authority to protect their citizens' health and welfare. A central and traditional feature of this "police power" is state authority to adopt policies to shape the mix of electric generation sources that serve the states' citizens and to protect public health and the environment.

Acting with this authority, the Illinois legislature enacted the Future Energy Jobs Act ("FEJA"), Illinois Public Act 099-0906, on December 1, 2016 to establish a firm foundation for the provision and growth of zero-carbon energy and respond to the threat of climate change. The legislation seeks to achieve three primary objectives: (1) to ensure that Illinois and its citizens enjoy the benefits of an "evolving clean energy marketplace," P.A. 99-0906, Section 1; (2) to maximize the impact of the State's existing energy efficiency and renewable energy portfolio standards," *id.*; and (3) to "reduc[e] emissions of carbon dioxide and other air pollutants critical to improving the air quality . . . for Illinois residents," *id.* at Section 1.5.

The Legislature concluded that preserving existing and promoting new zero emissions generation was "vital" to meet the third objective. *Id.* It specifically concluded that "reducing emissions of carbon dioxide and other air pollutants" was critical to the state's environmental and public health goals. *Id.* These reductions are needed as power plant emissions "have significant adverse health effects on persons exposed to them, and carbon dioxide emissions

result in climate change trends that could significantly impact Illinois." *Id.* These public health and environmental concerns are the FEJA's principal focus, and the urgency of the problem is borne out by overwhelming scientific evidence.[1]

The FEJA includes a number of programs and policies designed to promote clean energy, including, among other things, expanded energy efficiency standards, refined renewable portfolio standards, and a Zero Emission Standard ("ZES"). Plaintiffs here challenge only the ZES. The ZES sets a specific value, a zero emission credit ("ZEC"), to compensate eligible generation sources for the environmental benefit they provide. As a result, the Illinois standard reflects and addresses a serious and legitimate state concern: the achievement of the state's environmental goals for the benefit of Illinois residents.

This underlying public interest goal is embedded in the ZES's design. ZECs are sold independent from any sale of energy or capacity. Payments for ZECs are not conditioned on the completion of wholesale market payments. The ZEC does not adjust the price of a wholesale sale. Instead, the ZES addresses an environmental goal by reflecting the Social Cost of Carbon as calculated by the Legislature.[2] That price reflects a technically sophisticated and serious effort to capture the public benefits of zero-emitting power generation. It is independent of any wholesale market price or generation sale. To ensure that ZEC procurement "remains affordable to retail

---

[1] *See, e.g.*, Gavin A. Schmidt, Dir., NASA's Goddard Institute for Space Studies & Derek Arndt, Chief, Monitoring Branch, NOAA's National Centers for Environmental Information, Presentation of Annual Global Analysis for 2016 (Jan.18, 2017), https://www.nasa.gov/sites/default/files/atoms/files/noaa-nasa_global_analysis-2016.pdf; NASA, GISS Surface Temperature Analysis (GISTEMP), https://data.giss.nasa.gov/gistemp/ (last visited April 10, 2017); World Meteorological Org., *WMO Confirms 2016 as Hottest Year on Record, About 1.1 Degree C above Pre-Industrial Era*, https://public.wmo.int/en/media/press-release/wmo-confirms-2016-hottest-year-record-about-11%C2%B0c-above-pre-industrial-era (last visited April 10, 2017); MetOffice.gov.uk, *2016: One of the Warmest Two Years on Record*. Met Office, http://www.metoffice.gov.uk/news/releases/2017/2016-record-breaking-year-for-global-temperature (last visited April 10, 2017).

[2] The ZEC incorporates and reflects the Social Cost of Carbon, itself established by the federal Interagency Working group. The price can fall if *projected* energy and capacity prices rise above a benchmark established by law to ensure that it "remains affordable to retail customers in [Illinois]." P.A. 099-0906, Section 1.5.

customers in [Illinois]," the ZEC price can fall if *projected* energy and capacity prices rise above a benchmark established in the law. However, the ZEC price cannot rise above the Social Cost of Carbon.

Study and analysis show that "premature closure of existing nuclear power plants in Illinois will affect the societal cost of increased greenhouse gas emissions." P.A. 099-0906, Section 1.5(5). Zero emission nuclear power accounts for more than half of all electricity generated in Illinois. Nuclear Energy Inst., *State Electricity Generation Fuel Shares*, https://www.nei.org/Knowledge-Center/Nuclear-Statistics/US-Nuclear-Power-Plants/State-Electricity-Generation-Fuel-Shares (last visited April 10, 2017). The closing of these plants would thus cause a significant increase in carbon emissions resulting from electricity generation in Illinois because these plants would likely be replaced with generating units utilizing the currently prevailing fuel type for new generation, natural gas. *See* U.S. Energy Info. Admin., *Construction Cost Data for Electric Generators Installed in 2014*, https://www.eia.gov/electricity/generatorcosts/ (last visited April 10, 2017).

Challenging this one component of the FEJA, Plaintiffs allege that the ZES is (1) field preempted by the Federal Power Act ("FPA"), 16 U.S.C. § 791a *et seq.,* under the Supremacy Clause, U.S. Const. art. VI, cl. 2; (2) conflict preempted by the FPA under the Supremacy Clause; and (3) invalid under the dormant Commerce Clause, U.S. Const. art. I, § 8, cl. 3.

The Illinois ZES does not impermissibly encroach on the statutory authority of the Federal Energy Regulatory Commission ("FERC") under the FPA, nor does it violate the dormant Commerce Clause. Ample precedent from courts and administrative agencies confirms that nothing in the FPA preempts such programs. As described below, the ZES falls well within the traditional scope of authority that states have long possessed in pursuit of their

4

environmental, public health, and clean energy goals. Moreover, it does not offend the dormant Commerce Clause because it does not discriminate upon the basis of origin. In sum, the Plaintiffs' claims should be rejected and the action dismissed.

## II.     INTEREST OF AMICI

EDF is a national, nonpartisan, not-for-profit environmental organization representing over 370,000 members in the United States, including over 14,000 members in Illinois. Since 1967, EDF has linked science, economics, and law to create innovative, equitable, and cost-effective solutions to urgent environmental problems. Protecting public health and the environment from harmful airborne contaminants, including greenhouse gases, is a core organizational mission. EDF has been actively involved in the development of policies to limit greenhouse gas emissions and foster clean energy at the state, national, and international levels through judicial and administrative proceedings at the state and federal level, including in Illinois. EDF actively participated in the Illinois legislative effort underlying the FEJA.

Elevate Energy is a nonpartisan, not-for-profit organization with a mission of promoting smarter energy use for all. Elevate Energy designs and implements energy efficiency programs that ensure the benefits of energy efficiency, demand response, and clean energy reach those who need them most. In addition to its programmatic work, Elevate Energy is actively involved in the development of policies to limit climate pollution emissions and foster robust clean energy industries in Illinois and actively participated in the legislative effort underlying the FEJA.

RHA is a regional not-for-profit organization with a mission to prevent lung disease, promote clean air and help people live better through research, advocacy and education. Founded in Chicago in 1906, RHA addresses subjects including asthma, chronic obstructive pulmonary disorder, lung cancer, tobacco control, and air quality. RHA has long been active in promoting

public policies that reduce air pollution, and as there are documented health risks from climate change, RHA's work includes addressing numerous risks to human health exacerbated by the greenhouse gas emissions driving global warming and destabilizing the earth's climate. RHA has been actively involved in the implementation of policies to limit emissions and in fostering clean energy expansion at the local, state, and national levels. RHA was an active participant in the legislative effort that resulted in the FEJA's passage and enactment.

CUB is a statutorily-created, not-for-profit organization with approximately 100,000 members across Illinois. CUB's mission is to represent the interests of residential and small commercial utility customers in state and federal regulatory and judicial proceedings. CUB regularly advocates before state and federal agencies, and participates in the stakeholder processes of PJM Interconnection, LLC, and Midcontinent Independent System Operator, Inc., the federal regional transmission organizations and independent system operators for Illinois. Along with other *amici*, CUB was an active participant in the development and enactment of the FEJA.

Together, *amici* have an interest in supporting legislation, like the FEJA, that fights to curb climate change, protect public health, and spur affordable clean energy development.

### III.     ARGUMENT

#### a.  Plaintiffs Fail to Demonstrate the FPA Preempts Illinois's Action

Plaintiffs argue that the ZES is both "field preempted," Compl., ¶ 69, and "conflict preempted," Compl., ¶ 77, alleging that the ZES "invades" FERC's exclusive authority "because it directly affects the wholesale clearing price of electricity sales." Compl., ¶ 71. Plaintiffs' allegations rest upon a mischaracterization of the FPA's preemption doctrine. In fact, Petitioners' rendition of the doctrine conflicts with the actual case law, including the very cases cited in the

Complaint. In particular, the Plaintiffs wrongly attempt to (1) replace the Supreme Court's collaborative federalism-based inquiry with a rigid, mechanical test of their own devising and (2) discount the state's well-established authority to craft energy policy aimed at addressing important environmental and public health concerns.

### 1. The ZES Fits Comfortably Within the FPA's "Collaborative Federalism" Framework

The FPA requires FERC to ensure that "rate[s]" and rules or practices "affecting" such rates for interstate wholesale sales of electric energy are "just and reasonable." 16 U.S.C. § 824d(a). It expressly retains state authority over "any other sale of electric energy," *id.* at § 824(b)(1), as well as "facilities used for the generation of electric energy." *Id.* at § 824(b)(1). In interpreting this jurisdictional allocation, the Plaintiffs repeatedly misrepresent three recent Supreme Court cases: *Hughes v. Talen Energy Marketing, LLC*, 136 S. Ct. 1288 (2016) ("*Hughes*"), *FERC v. Electric Power Supply Ass'n*, 136 S. Ct. 760 (2016) ("*EPSA*"), and *Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591 (2015) ("*Oneok*").[3] All three cases center on the jurisdictional allocation between state and federal governments in deregulated areas of the United States, as is the case here. In each instance, the Supreme Court has favored a practical, "collaborative federalism" framework that preserves states' traditional authority. *See e.g.*, *EPSA*, 136 S. Ct. at 780 (characterizing the rule at issue as "a program of cooperative federalism, in which the States retain the last word.").

In each case, the Supreme Court rejected a bright-line jurisdictional analysis. In *Oneok* the Court found that "[p]etitioners and the dissent argue that there is, or should be, a clear division between areas of state and federal authority . . . But that Platonic ideal does not describe

---

[3] *EPSA* and *Hughes* involved preemption claims under the FPA. *Oneok v. Learjet* centered upon a Natural Gas Act claim, not the FPA. However, "the relevant provisions of the two statutes are analogous," and courts have "routinely relied on NGA cases in determining the scope of the FPA, and vice versa." *Hughes*, 136 S. Ct. at 1298, n.10.

the . . . regulatory world." 135 S. Ct. at 1601 (citation omitted). As the Court further explained in *EPSA*, it is "a fact of economic life that the wholesale and retail markets in electricity . . . are not hermetically sealed from each other. To the contrary, transactions that occur on the wholesale market have natural consequences at the retail level." 136 S. Ct. at 776. Justice Sotomayor's concurrence in *Hughes* explains the FPA's collaborative nature requires that courts "must be careful not to confuse the congressionally designed interplay between state and federal regulation . . . for impermissible tension that requires pre-emption under the Supremacy Clause." *Hughes*, 136 S. Ct. at 1300 (citation omitted). "[I]n short, the [FPA], like all collaborative federalism statutes, envisions a federal-state relationship marked by interdependence." *Id.* Case law thus clearly rejects the zero-sum analysis put forth by the Plaintiffs where an action by one level of government must necessarily displace the other. *See, e.g., EPSA,* 136 S. Ct. at 779 (with the Court endorsing an approach taken to allow both state and federal authorities to regulate the same resource, noting that FERC's rule was created so that "[the resource] as implemented in the Rule is a program of cooperative federalism, in which the States retain the last word.").

The ZES fits comfortably within the Supreme Court's framework. First and foremost, there must be a FERC "jurisdictional sale," with the state either engaging directly in rate setting or regulating practices directly affecting a rate, for there to be any question of preemption. *Oneok*, 135 S. Ct. at 1599; *EPSA*, 136 S. Ct. at 774. *Oneok* teaches that, even if this were the case, unlike at issue here, the principal inquiry would be "the target at which the law aims," meaning a state action is invalid only in instances where it "directly" aims at regulating within FERC's wholesale rate-setting purview. 135 S. Ct. 1599–1600. That is, the enunciated conflict only occurs when FERC's "rate-setting" is challenged by some state action. "Rate-setting," in turn, has been defined by the *EPSA* Court as "establish[ing] the amount of money a consumer

8

will hand over in exchange for power." 136 S. Ct. at 774. State actions focused on some *other* activity outside FERC's wholesale rate-setting authority, such as retail rate-setting or considerations external to wholesale market rate setting, are therefore not preempted. *See also, EPSA,* 136 S. Ct. at 774 (espousing a similar test, based principally on whether the "rules or practices [] directly affect the wholesale rate.").

Finally, in invalidating a Maryland program that required a generator to bid into the wholesale capacity market and replaced the resulting auction price with a wholly different price, the Supreme Court in *Hughes* highlighted the limits of its holding, and the states' authority to promote clean power generation. The *Hughes* Court emphasized that:

> Our holding is limited: We reject Maryland's program only because it disregards an interstate wholesale rate required by FERC. We therefore need not and do not address the permissibility of various other measures States might employ to encourage development of new or clean generation, including tax incentives, land grants, direct subsidies, construction of state-owned generation facilities, or re-regulation of the energy sector. Nothing in this opinion should be read to foreclose Maryland and other States from encouraging production of new or clean generation through measures untethered to a generator's wholesale market participation.

136 S. Ct. at 1299 (internal quotation marks omitted).

Disregarding the *Hughes* Court's clear limiting language, the Plaintiffs unfaithfully paint the decision with a broad brush. They suggest the Court's holding was sweeping and that "any state regulation that effectively alters the wholesale rate a generator will receive" is impermissible. Compl. ¶ 28. But Plaintiffs not only ignore the *Hughes* Court's own description of what its decision did not reach, but also ignore the way the Illinois ZES is structured.

The Maryland program at issue in *Hughes*—which conditioned payment of funds on mandated wholesale capacity market sales—is much different than the Illinois ZES. In Illinois, payments are not tied to participation in a wholesale market of any kind. In Illinois, there is no adjustment of a wholesale auction result after the fact. The Illinois program neither targets nor

supplants the rate for the sale of capacity or energy. It creates a credit with value based upon a known and specific price linked to an unquestionably valid state policy concern: the Social Cost of Carbon.

For those reasons, the ZES falls within the broad zone of state authority that the *Hughes* Court expressly recognized would be unaffected by its holding. By creating a credit separate from the wholesale marketplace, reflective of an environmental value squarely within the state's police power concern, the ZES is separate from a FERC "rate" and thus permissible under *Oneok* and *EPSA.* Even if the ZES were reviewed under the test in *Oneok,* it would certainly pass. The program's target—zero-emissions attributes in furtherance of stated environmental and public health policy—is a traditional state interest, and is separate and distinct from the wholesale market's target: the sale of wholesale electricity. Plaintiffs conflate "congressionally designed interplay between state and federal regulation" for "impermissible tension that requires pre-emption under the Supremacy Clause." *Hughes*, 136 S. Ct. at 1300 (Sotomayor, J., concurring). They ignore what the Supreme Court has already realized: that transactions that occur at one level will "have natural consequences" at another. *EPSA*, 136 S. Ct. at 776.

### 2. The ZES is Designed to Advance Legitimate State Objectives

The ZES is structured to advance unquestionably legitimate state public policy objectives of protecting public health and the environment. These public values are separate and distinct from the price and sale of electricity itself. Courts and FERC have repeatedly recognized states' authority to craft public policy objectives and designs in this manner. *See Wheelabrator Lisbon, Inc. v. Conn. Dep't of Pub. Util. Control*, 531 F.3d 183, 186 (2d Cir. 2008) (recognizing that "RECs are inventions of state property law" and a valid exercise of state authority); *Entergy Nuclear Vt. Yankee, LLC v. Shumlin,* 733 F.3d 393, 417 (2d Cir. 2013) (recognizing that

"traditional state authority includes the ability to "direct the planning and resource decisions of utilities"); *Conn. Dep't of Pub. Util. Control v. FERC*, 569 F.3d 477, 481 (D.C. Cir. 2009) (recognizing that states may require existing generators to meet a variety of actions). *See also S. Cal. Edison Co.*, 71 FERC ¶ 61,269 at 62,076 (1995) (recognizing that states can "diversify their generation mix to meet environmental goals"). *In re S. Cal. Edison Co.,* 70 FERC ¶ 61,215, 61,676 (1995) (recognizing that states may "favor particular generation technologies over others"). *See also In re Cal. PUC*, 134 FERC ¶ 61,044, 61,160 (2011) (acknowledging "the reality that states have the authority to dictate the generation resources from which utilities may procure electric energy"). *See also S.C. Pub. Serv. Auth. v. FERC*, 762 F.3d 41, 66 (D.C. Cir. 2014) (noting that Order 1000 responded to "the failure of current transmission planning processes to account for transmission needs driven by public policy requirements). FERC has likewise disclaimed jurisdiction over Renewable Energy Credits ("RECs") when sold independently—as ZECs are here—from wholesale sales, stating that an "unbundled REC transaction does not affect wholesale electricity rates, and the charge for the unbundled RECs is not a charge in connection with a wholesale sale of electricity." *WSPP, Inc., 139 FERC ¶ 61,061 at 61,426 (2012).*

Alternatively, Plaintiffs intimate that the ZES lacks a bona fide environmental foundation. *See* Compl., ¶ 88. However, the Complaint does not, and could not, plead any facts that would cast doubt about the critical importance of combatting climate change. Nor can the Complaint credibly suggest that the ZES does not assist in that effort. Avoiding backsliding on greenhouse gas emissions reductions is a legitimate environmental and public health purpose, and the ZES is founded on this goal. P.A. 099-0906, Section 1.5(2) (The General Assembly found that, "carbon dioxide emissions result in climate change trends that could significantly

11

adversely impact Illinois."). Recent national and international scientific reports from well-respected climate science agencies underscore the critical nature of this focus. 2016 was the hottest year of record following the two other hottest years of record in 2014 and 2015. *See supra* n. 1. Illinois has acknowledged, and Plaintiffs have not challenged, that backsliding on greenhouse gas emissions reductions must be avoided. Plaintiffs' mischaracterization of the ZES as a bill enacted for "political reasons," Compl., ¶ 88, ignores the seriousness of well-established scientific findings.

### b. Plaintiffs Fail to State a Claim Under the Dormant Commerce Clause.

Plaintiffs allege that the ZES is invalid under the dormant Commerce Clause, U.S. Const. art. I, § 8, cl. 3, stating that the ZES "is directly discriminatory, as only favored Illinois nuclear plants will receive subsidies . . . [and] is not even-handed with respect to other technologies that could produce carbon-free electricity and with respect to out-of-state generation." Compl., ¶ 90. Alternatively, the Plaintiffs allege that "[e]ven if the ZEC program is not deemed discriminatory, it is still invalid under the Commerce Clause because it imposes market-distorting burdens on interstate and international commerce that far outweigh the purported local benefits." Compl., ¶ 91. Plaintiffs' arguments (1) marginalize the legislation's stated environmental policy foundation and (2) attack a ZES design decision that is irrelevant to the proper analysis under the dormant Commerce Clause.

### 1. The ZES's Underlying Purpose is Within the State's Well-Established Authority

Dormant Commerce Clause litigation is "driven by concern about 'economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.'" *Dep't of Rev. of Ky. v. Davis*, 553 U.S. 328, 338 (2008) (quoting *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273–74 (1988)). As held in *Exxon*

*Corp. v. Governor of Maryland,* 437 U.S. 117 (1978), "the Clause protects the interstate market, not particular interstate firms."

The Illinois ZES contains no in-state requirement or geographic requirement of any kind. Plaintiffs acknowledge the law's non-discriminatory language, noting that "all nuclear facilities connected to MISO or PJM are purportedly eligible to apply." Compl., ¶ 90. They allege, however, that the "procurement criteria have been rigged so that only" two in-state nuclear generators will be selected. *Id.* But the ZES relies on "public interest criteria that include, but are not limited to, minimizing carbon dioxide emissions that result from electricity consumed in Illinois and minimizing sulfur dioxide, nitrogen oxide, and particulate matter emissions that adversely affect the citizens of this State." 20 ILCS 3855/1-75(d-5)(1)(C). Geographic considerations based on a rationale apart from the product's origin—as is plainly the case here— is well within a state's authority under the dormant Commerce Clause. *See Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456 (1981) (upholding geographically neutral regulation even though in-state industry incidentally benefited). *See City of Philadelphia v. New Jersey,* 437 U.S. 617 (1978) (holding that geographic discrimination is prohibited "unless there is some reason, apart from their origin, to treat them differently"); *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1089 (9th Cir. 2013) (holding that "a regulation is not facially discriminatory simply because it affects in-state and out-of-state interests unequally"). Protecting Illinois residents from the health impacts of harmful air pollution and climate change are unquestionably legitimate, non-discriminatory objectives.

The Plaintiffs acknowledge but disregard the fact that the Illinois ZES allows any zero emission facility to qualify. Compl., ¶¶ 59–62. The law is clear in this respect: ZES procurement is based on public interest criteria, including minimizing greenhouse gases that adversely affect

Illinois citizens, not on the geographic location of a facility. 20 ILCS 3855/1-75(d)(1)(c). Environmental and public health impacts on Illinois citizens is thus what matters for the procurement. That is consistent with the public policy objectives at which the ZES is directed.

In essence, Plaintiffs misconstrue and undermine the state policy objective at issue. They allege the environmental benefits underlying the law—which are reflected in the procurement criteria—is somehow tantamount to the state having "rigged" the ZEC procurement outcome. Compl., ¶ 90. These criteria, however, are well within the permissible state police power goals as recognized in settled case-law. The criteria are necessary to achieve one particular legitimate state purpose: achievement of a state carbon reduction goal to improve Illinois environmental quality. Plaintiffs' conclusory statement that "[t]he ZEC program was enacted for political reasons," Compl., ¶ 88, —and not, as the FEJA clearly states, to confront critical public health and environmental concerns caused by air pollution and climate change—is no "substitute for minimally sufficient factual allegations." *Paycom Billing Servs.*, 467 F.3d at 289 (internal quotation marks omitted). Plaintiffs' effort to denigrate the motives behind the Illinois program are completely off-target. In fact, the FEJA is based upon a voluminous, robust body of scientific studies, and technical analyses documenting the environmental significance of preserving major sources of zero-carbon, zero-air pollution sources including research done for the Illinois General Assembly on this precise point. *See generally, Potential Nuclear Power Plant Closings in Illinois,* (Jan. 5, 2016) *available at* http://www.ilga.gov/reports/special/Report_Potential%20Nuclear%20Power%20Plant%20Closings%20in%20IL.pdf. Plaintiffs recognize the legitimacy of the carbon reduction goal of the ZEC program, agreeing that "the reduction of carbon emissions is important" but somehow claim that the reduction of carbon emissions can be more effectively achieved by other means. Compl., ¶

89. However, they provide no alternative suggestion, and, even if they did, the dormant Commerce Clause does not empower courts to second-guess legislative judgments regarding what program design will best further policy objectives.

2. Plaintiffs' Preference for an Alternate ZES Design is Irrelevant to Analysis under Dormant Commerce Clause Doctrine

Plaintiffs' Complaint suggests that the ZES is defective because it does not apply to other types of resources. Compl., ¶ 90. Plaintiffs' design preference has no bearing on dormant Commerce Clause analysis. In determining whether a state action is discriminatory under the dormant Commerce Clause, "similarly situated" firms should be compared. *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 298 (1997). The Illinois ZES is crafted for a particular resource type that advances particular and identified state environmental and public health goals. These same goals underlie the FEJA's other policies, including zero emission resources like energy efficiency, 220 ILCS 5/8-103B (expanding energy efficiency programs to decrease environmental impacts), and fully funding the Illinois renewable energy portfolio standard, 20 ILCS 3855/1-75(c).

Dormant Commerce Clause jurisprudence is driven by concerns about measures that protect in-state economic interests at the expenses of out-of-state competitors. The Plaintiffs' assertion that "[t]he program is not even-handed with respect to other technologies that could produce carbon-free electricity," Compl., ¶ 90, is irrelevant. The fact that non-nuclear resources are not included in the ZES is of no consequence to a dormant Commerce Clause claim; this fact is true as much for in-state, non-nuclear resources as out-of-state non-nuclear resources.

## IV. CONCLUSION

For the foregoing reasons, EDF, CUB, RHA, and Elevate Energy respectfully urge the Court to grant Defendants' motion to dismiss.

Dated: April 12, 2017                                    Respectfully Submitted,

/s/ Michael Panfil                                       /s/ Anne McKibbin
Director of Federal Energy Policy and                    Policy Director
Senior Attorney                                          Elevate Energy
Environmental Defense Fund                               322 S. Green Street, Suite 300
1875 Connecticut Ave., NW                                Chicago, IL  60607
Washington D.C. 20009                                    773-269-2225
T 202.572.3280                                           Anne.McKibbin@ElevateEnergy.org
mpanfil@edf.org


/s/ Kristin Munsch                                       /s/ Joel J. Africk
Deputy Director                                          President and Chief Executive
Citizens Utility Board                                   Officer
309 W. Washington, Suite 800                             Respiratory Health Association
Chicago, IL  60606                                       1440 W. Washington Blvd.
(312) 263-4282                                           Chicago, Illinois 60607
(312) 263-4329 fax                                       jafrick@lungchicago.org
kmunsch@citizensutilityboard.org

**CERTIFICATE OF SERVICE**

The undersigned certifies that all counsel of record in this proceeding were served with a copy of this document via electronic mail on April 12, 2017.

/s/ Kristin Munsch
Kristin Munsch
Citizens Utility Board
Deputy Director
309 W. Washington Street, Suite 800
Chicago, Illinois 60606
(312) 263-4282
kmunsch@citizensutilityboard.org

UNITED STATES DISCTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ELECTRIC POWER SUPPLY ASSOCIATION, DYNEGY INC., EASTERN GENERATION, LLC, NRG ENERGY, INC., and CALPINE CORPORATION, | ) ) ) ) ) | |
| Plaintiffs | ) ) | Case No. 17-cv-01164 |
| v. | ) ) | Judge Manish S. Shah |
| ANTHONY M. STAR, in his official capacity as Director of the Illinois Power Agency, and BRIEN J. SHEAHAN, JOHN R. ROSALES, SADZI MARTHA OLIVA, MIGUEL DEL VALLE, and SHERINA MAYE EDWARDS, in their official capacities as Commissioners of the Illinois Commerce Commission, | ) ) ) ) ) ) ) ) | |
| Defendants | ) ) ) | |

## NOTICE OF MOTION

TO: ALL COUNSEL OF RECORD

**PLEASE TAKE NOTICE** that on April 12, 2017 the undersigned filed in paper form and via hand-delivery the attached **Unopposed Motion for Leave to File a Brief *Amici Curiae* of the Environmental Defense Fund, Citizens Utility Board, Elevate Energy, and Respiratory Health Association In Support of Defendant's Motion to Dismiss the Complaint** with the Clerk's Office of the United States District Court for the Northern District of Illinois, Eastern Division, at 219 South Dearborn Street, Chicago, Illinois 60604.

Dated:          April 12, 2017                    Respectfully Submitted,

Kristin Munsch
Citizens Utility Board
Deputy Director
309 W. Washington Street, Suite 800
Chicago, Illinois 60606
(312) 263-4282
kmunsch@citizensutilityboard.org

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2017, a copy of the foregoing **Notice of Motion** and

attached **Unopposed Motion for Leave to File a Brief** *Amici Curiae* were served electronically

via email upon all counsel of record.

Kristin Munsch
Citizens Utility Board
Deputy Director
309 W. Washington Street, Suite 800
Chicago, Illinois 60606
(312) 263-4282
kmunsch@citizensutilityboard.org

*Attorneys for Plaintiffs Electric Power Supply Association, Dynegy, Inc., Eastern Generation, LLC, Calpine Corporation, NRG Energy, Inc., and Monitoring Analytics, LLC*

**Suyash Agrawal**
Massey & Gail LLP
50 E Washington Street
Suite 400
Chicago, IL 60602
3122831590
sagrawal@masseygail.com

**David A. Barrett**
BOIES SCHILLER & FLEXNER, LLP
7th Floor
575 Lexington Avenue
New York, NY 10022
(212) 446-2300
dbarrett@bsfllp.com

**Paul Berks**
Massey & Gail LLP
50 East Washington St.
Suite 400
Chicago, IL 60602
312-379-0469
pberks@masseygail.com

**Jason C Cyrulnik**
BOIES SCHILLER & FLEXNER, LLP
333 Main Street
Armonk, NY 10504
(914) 749-8200
jcyrulnik@bsfllp.com

**William T Dzurilla**
BOIES SCHILLER & FLEXNER, LLP
Suite 1200
401 East Olas Blvd
Fort Lauderdale, FL 33301
(954) 356-0011
wdzurilla@bsfllp.com

**Jonathan Massey**
Massey & Gail LLP
1325 G Street NW
Suite 500
Washington, DC 20005
(202) 652-4511
jmassey@masseygail.com

**Jonathan David Schiller**
Boies, Schiller & Flexner Llp
575 Lexington Ave.
7th Floor
New York, NY 10022
(212) 446-2300
jschiller@bsfllp.com

**Jeffrey Mayes**
Monitoring Analytics Llc
2621 Van Buren Avenue
Suite 160
Eagleville, PA 19403
(610) 271-8050
jeffrey.mayes@monitoringanalytics.com

**Leonard A. Gail**
Massey & Gail
50 East Washington Street
Suite 400
Chicago, IL 60602
(312) 283-1590
lgail@masseygail.com

**Edward J Normand**
BOIES SCHILLER & FLEXNER,
LLP
333 Main Street
Armonk, NY 10504
(914) 749-8200
enormand@bsfllp.com

**Stuart Singer**
Boies, Schiller & Flexner Llp
401 E. Las Olas Boulevard
Suite 1200
Fort Lauderdale, FL 33301
(954) 356-0011
ssinger@bsfllp.com

*Attorneys for Defendants Anthony M. Star, Brien J. Sheahan, John R. Rosales, Sadzi Martha Oliva, Miguel del Valle, and Sherina Maye Edwards*

| | |
|---|---|
| **Richard Scott Huszagh** | **Thomas A. Ioppolo** |
| Office of the Attorney General | Illinois Attorney General's |
| 100 West Randolph Street, 12th Floor | Office (100 West Randolph) |
| Chicago, IL 60601 | 100 West Randolph Street |
| (312) 814-2587 | 13th Floor |
| rhuszagh@atg.state.il.us | Chicago, IL 60601 |
| | (312)814-7198 |
| | tioppolo@atg.state.il.us |

*Attorneys for Intervenor Defendant Exelon Generation Company, LLC*

| | |
|---|---|
| **David W. DeBruin** | **William K. Dreher** |
| Jenner & Block | Jenner & Block LLP |
| 1099 New York Avenue NW | 1099 New York Ave., NW |
| Suite 900 | Suite 900 |
| Washington, DC 20001 | Washington, DC 20001 |
| (202)639-6015 | (202) 639-3898 |
| ddebruin@jenner.com | WDreher@jenner.com |
| | |
| **Gabriel A. Fuentes** | **Matthew E. Price** |
| Jenner & Block LLP | Jenner & Block LLP |
| 353 N. Clark Street | 1099 New York Ave., NW, Suite |
| Chicago, IL 60654 | 900 |
| (312) 222-9350 | Washington, DC 20001-4412 |
| gfuentes@jenner.com | (202) 639-6873 |
| | MPrice@jenner.com |
| | |
| **Zachary C. Schauf** | |
| Jenner & Block LLP | |
| 1099 New York Ave., NW, Suite 900 | |
| Washington, DC 20001 | |
| (202) 637-6379 | |
| ZSchauf@jenner.com | |

*Attorneys for Amicus PJM Interconnection, LLC*

**Richard George Douglass**
Novack and Macey LLP
100 N. Riverside Plaza
Chicago, IL 60606
(312) 419-6900
rdouglass@novackandmacey.com

**Paul M. Flynn**
Wright & Talisman, P.C.
1200 G Street, NW
Suite 600
Washington, DC 20005
(202) 393-1200
flynn@wrightlaw.com

**Andrew T. Swers**
Wright & Talisman, P.C.
1200 G Street, NW
Suite 600
Washington, DC 20005
(202) 393-1200
swers@wrightlaw.com