**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ELECTRIC POWER SUPPLY ASSOCIATION, ) <br> DYNEGY INC., EASTERN GENERATION ) <br> LLC, NRG ENERGY, INC., and ) <br> CALPINE CORPORATION, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ANTHONY M. STAR, in his official capacity as ) <br> Director of the Illinois Power Agency, and BRIEN ) <br> J. SHEAHAN, JOHN R. ROSALES, SADZI ) <br> MARTHA OLIVA, MIGUEL DEL VALLE, and ) <br> SHERINA MAYE EDWARDS, in their official ) <br> capacities as Commissioners of the Illinois ) <br> Commerce Commission, ) <br> ) <br> Defendants. ) | Case No. 1:17-cv-01164 <br><br> District Judge Manish S. Shah |

**INTERVENOR EXELON GENERATION COMPANY, LLC'S OPPOSITION
TO MOTION TO INTERVENE OF
THE INDEPENDENT MARKET MONITOR FOR PJM**

Exelon Generation Company, LLC ("Exelon") respectfully submits this memorandum of law in opposition to the motion to intervene as plaintiff filed by Monitoring Analytics, LLC ("Monitoring Analytics"), acting in its role as the Independent Market Monitor for PJM Interconnection, LLC ("PJM").

Monitoring Analytics asserts that it is entitled to intervene as of right pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure and to permissive intervention pursuant to Rule 24(b)(1)(B). It is entitled to neither. Monitoring Analytics has no stake in this suit—it freely concedes that its only interest is ideological, not financial. And despite its claim that it must "promote and defend the public interest in robust and competitive markets," it is not the federal

1

regulator charged with interpreting and ensuring compliance with the Federal Power Act ("FPA"). Monitoring Analytics's Mem. Supp. Mot. Intervene ("Mem.") ¶ 15, ECF 30. That is the Federal Energy Regulation Commission. Monitoring Analytics's only authority, as it concedes, Mot. Intervene ¶ 8, ECF 30, is to ensure that market participants adhere to the rules set by PJM and approved by FERC and to submit recommendations to those entities that market rules be changed. Neither Congress nor FERC has charged it with assessing whether state programs unlawfully interfere with the federal markets. And indeed, FERC regularly disagrees with Monitoring Analytics's view of what the FPA requires.

If Monitoring Analytics has a view as to the proper interpretation of the FPA, it may submit an amicus brief explaining that view to this Court. But Monitoring Analytics has identified no reason why it should be permitted to intervene as a plaintiff, with all that that entails. *See, e.g.*, *Koschnick v. Doyle*, No. 09-CV-767-VIS, 2010 WL 897360, at *3 (W.D. Wis. Mar. 11, 2010) (denying permissive intervention because "proposed intervenors can adequately present their position as *amici*," while "adding them as defendants makes this case unnecessarily more complicated and increases the likelihood of delay"); *Wis. Right to Life Political Action Comm. v. Brennan*, No. 09-CV-764-VIS, 2010 WL 933809, at *4 (W.D. Wis. Mar. 11, 2010) (same); *United States v. Bd. of Educ. of Chicago*, No. 80 C 5124, 1993 WL 408356, at *2 (N.D. Ill. Oct. 12, 1993) (finding "that amicus curiae status is better suited for this organization than party intervention"). Monitoring Analytics's motion to intervene should be denied.

## ARGUMENT

### I.     Monitoring Analytics Lacks Article III Standing.

Monitoring Analytics lacks standing to intervene as of right. The Seventh Circuit "require[s] … standing of all would-be intervenors" as of right. *Planned Parenthood of Wis. v.*

2

*Doyle*, 162 F.3d 463, 465 (7th Cir. 1998). Monitoring Analytics concedes that it has *no* "financial interest" in this case; instead, its interest is in the abstract enforcement of its view of the FPA. Mot. Intervene ¶ 2. It claims to "represent[] the public interest objectively and independently of the government," *id.*, and that its "interests would be harmed" if Defendants prevailed "because it would have failed to fulfill its purpose and to protect the public interest," *id.* ¶ 14.

But Monitoring Analytics does not represent the public. It is a private entity—a consultant tasked with providing technical advice to PJM on the design and enforcement of PJM's market rules. *Id.* ¶ 8. Its assertion that "[n]o other entity specifically represents the public interest in competitive, efficient markets" is thus absurd. *Id.* ¶ 10. Monitoring Analytics is not charged with carrying out the FPA's requirement that wholesale rates be "just and reasonable," 16 U.S.C. § 824d(a); that is FERC's job. Indeed, FERC regulations specifically forbid Monitoring Analytics from "effectuat[ing] its proposed market design itself," and instead permit it only to submit recommendations to PJM or FERC staff. 18 C.F.R. § 35.28(g)(3)(ii)(A)(1)-(2). While FERC's expert view of the proper interpretation of the FPA is entitled to considerable deference, Monitoring Analytics's view is thus entitled to no greater weight than that of a private citizen. Nor is that lack of deference unwarranted: FERC has directly rejected Monitoring Analytics's view of what the FPA requires *dozens* of times.[1] As these FERC decisions show, when Monitoring

---

[1] For a sampling of recent decisions by FERC rejecting Monitoring Analytics's views about the safeguards necessary to preserve just and reasonable rates, see, e.g., *PJM Interconnection, LLC*, 158 FERC ¶ 61,093, PP 26-27 (2017) (disagreeing with Market Monitor's views of what the FPA requires); *PJM Interconnection, LLC*, 155 FERC ¶ 61,281, PP 15-20 (2016) (rejecting Market Monitor's claim that certain behavior was distorting the market); *PJM Interconnection, LLC*, 155 FERC ¶ 61,061, P 20 (2016) (rejecting Market Monitor's assessment of PJM rule revisions); *Indep. Mkt. Monitor for PJM*, 155 FERC ¶ 61,059 (2016) (rejecting Market Monitor's argument that PJM tariff was unjust and unreasonable based on its treatment of demand response resources).

Analytics claims to speak on behalf of "federal regulators" and "the public interest in robust and competitive markets," Mem. ¶ 15, it is often misstating the actual position of those regulators.

In any event, it is settled law that Monitoring Analytics's mere interest in having the FPA enforced in the way it deems desirable is insufficient to provide Article III standing. "A purely ideological interest is not an adequate basis for standing to sue in a federal court …." *Planned Parenthood of Wis.*, 162 F.3d at 465; *see also Ragsdale v. Turnock*, 941 F.2d 501, 506 (7th Cir. 1991) (Posner, J., concurring in part and in the judgment) ("an affront to one's ideology is not an interest that will support standing to sue"); *United States v. Denlinger*, 89 F.3d 839, at *2 (7th Cir. 1996) (table) ("asserted desire to uphold Indiana law, to defend the principle of state sovereignty under the Tenth Amendment, and to keep the IRS honest in its collection actions" was insufficient for Article III standing). Absent standing, Monitoring Analytics cannot intervene.[2]

## II. Monitoring Analytics Lacks a Claim or Interest in the Proceeding.

For similar reasons, Monitoring Analytics lacks an interest relating to the subject matter of the action sufficient to permit intervention. Rule 24 "requires a 'direct, significant, and legally protectable interest in the question at issue in the lawsuit.'" *Rebel8 Inc. v. Zhu*, No. 15 CV 5469, 2015 WL 6123575, at *2 (N.D. Ill. Oct. 16, 2015) (Shah, J.) (quoting *Wis. Educ. Ass'n Council v. Walker*, 705 F.3d 640, 658 (7th Cir. 2013)). "That interest must be unique to the proposed intervenor." *Wis. Educ. Ass'n Council v. Walker*, 705 F.3d 640, 658 (7th Cir. 2013).

Again, Monitoring Analytics concedes that it "has no financial interest in the outcome of this proceeding," and asserts that its interest is in the proper enforcement of the FPA. Mot. Intervene ¶ 2. Courts have long recognized that "it would be impractical to base a finding of

---

[2] Monitoring Analytics cites several cases that stand for the unremarkable proposition that an organization can base its standing on the standing of its members. *See* Mem. ¶ 13. But Monitoring Analytics does not assert that it has any members, nor that those members have some distinct injury or interest granting them standing. Organizational standing has nothing to do with Monitoring Analytics's motion.

4

sufficient interest for purposes of establishing intervention of right solely on public interest grounds." *Blake v. Pallan*, 554 F.2d 947, 953 (9th Cir. 1977). Parties cannot intervene simply because they think a proceeding should come out a particular way. For example, in *United States v. 36.96 Acres of Land*, 754 F.2d 855 (7th Cir. 1985), a local environmental council sought to intervene based on its "intense concern" for an environmental site, and "its members' personal aesthetic, conservational and recreational interest in the property." *Id.* at 859 (quoting Brief of Appellant 7-8). But the Court held that was not a "direct, significant, and legally protectable" interest of the type required by Rule 24(a). *Id.* at 859-60. Put simply, Monitoring Analytics's mere "[a]bstract agreement with the position of [Plaintiffs] is not the type of 'direct, significant, and legally protectable' interest that gives rise to a right to intervene." *One Wis. Inst., Inc. v. Nichol*, 310 F.R.D. 394, 397 (W.D. Wis. 2015) (quoting *Wis. Educ. Ass'n*, 705 F.3d at 658); *Koschnick*, 2010 WL 897360, at *2 ("generalized, public policy interests are insufficient to create a direct, substantial interest to support intervention as of right").

Monitoring Analytics does claim in passing that it "would be required to expend significant resources to attempt to mitigate the harm inflicted on the PJM market design." Mot. Intervene ¶ 14. But Monitoring Analytics cites no case in which a court has accepted a similar interest as sufficient for intervention. It relies on *San Juan County v. United States*, 503 F.3d 1163, 1195 (10th Cir. 2007) for the proposition that "[a]n interest based on the practical impacts to an organization has been recognized as a basis for standing." Mem. ¶ 13. But *San Juan County* merely states that *some* "practical" impacts on an intervenor are "substantial[]" enough to warrant intervention, which is surely correct. 503 F.3d at 1195. Nothing in *San Juan County* states that the minimal impact asserted here is a sufficient interest for intervention. Indeed, Monitoring Analytics *already* typically screens many generators within PJM for market power mitigation

concerns, so it would not have to do much (if any) additional screening following implementation of the ZEC Program. *See* Monitoring Analytics, LLC, State of the Market Report for PJM: 2016, Vol. 2, 228 (2017), http://www.monitoringanalytics.com/reports/PJM_State_of_the_Market/2016/2016-som-pjm-volume2.pdf.

*San Juan County* is also irrelevant, because it came to that conclusion only *after* rejecting the Seventh Circuit's "direct, significant, and legally protectable interest" test. *Id.* at 1192-95. Indeed, *San Juan County* implies that the types of interests that Monitoring Analytics invokes here would *not* be accepted by courts applying the more stringent "direct, significant, and legally protectable interest" test. *Cf. Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs*, 101 F.3d 503, 507 (7th Cir. 1996) (concluding property owner could intervene if a lawsuit's resolution "could as a practical matter *destroy* his property right" (emphasis added)). Yet that is the test that applies here.

### III. Permissive Intervention Is Unwarranted Because Monitoring Analytics Does Not Assert a Claim.

Although courts generally have broad discretion to permit permissive intervention, that is true only if the party seeking to intervene has satisfied two requirements. First, "the applicant [must] have a claim or defense in common with a claim or defense in the suit." *Solid Waste Agency*, 101 F.3d at 509. Second, the claim or defense asserted by the intervenor must be one that "could … have been asserted had the intervenor been an original plaintiff or defendant." *Reedsburg Bank v. Apollo*, 508 F.2d 995, 1000 (7th Cir. 1975).

Monitoring Analytics satisfies neither of these criteria. Monitoring Analytics has asserted no claim at all, much less one "common with a claim … in the suit." *Solid Waste Agency*, 101 F.3d at 509. Instead, it has simply asserted an interest in ensuring that the ZEC Program not interfere with the functioning of FERC's wholesale markets. Mem. ¶¶ 2, 15. That aim may be

consonant with the aims of Plaintiffs, but it is not a legal claim, and so Monitoring Analytics could not have brought it before this Court "had [it] been an original plaintiff" in this case. *Reedsburg*, 508 F.2d at 1000.

Although Monitoring Analytics claims to have "unique expertise" regarding "the operation of PJM markets," that alleged expertise would only be grounds for participation as an amicus. Mot. Intervene ¶ 10. Unsurprisingly, though it claims to have "actively participated in a number of matters" similar to this one, Monitoring Analytics cites only instances in which it has been permitted to participate as an amicus. *See id.* ¶ 9 & n.3.[3] Monitoring Analytics has identified no reason why it should be permitted to intervene in the action as a plaintiff, with all that entails; it will not assist in factual development or discovery. It does claim the ability to "illuminate the relevant facts and tie them to its legal arguments," Mem. ¶ 20, but that is the purpose of an amicus, not an intervenor. In short, "adding the proposed intervenor[] could unnecessarily complicate and delay all stages of this case: discovery, dispositive motions, and trial." *One Wis. Inst.*, 310 F.R.D. at 399. There is no countervailing benefit.

## IV. Monitoring Analytics's Filing Is Procedurally Deficient.

Rule 24(c) requires that a motion to intervene "be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). That rule is "unambiguous," and though the Seventh Circuit "do[es] not advocate a strict interpretation of the rule in all circumstances," "that does not mean that intervenors may totally ignore the rule." *Shevlin v. Schewe*, 809 F.2d 447, 450 (7th Cir. 1987). Indeed, courts within this district have held that "total dereliction of the Rule warrants dismissal of the motion." *FTC v. Med Resorts Int'l*,

---

[3] In *PPL Energy Plus, LLC v. Solomon*, No. CV 11-745-PGS-DEA, 2013 WL 12123337, at *2 (D.N.J. Jan. 18, 2013), Monitoring Analytics was permitted to intervene solely for the limited purpose of seeking to quash a third-party subpoena.

*Inc.*, 199 F.R.D. 601, 606 (N.D. Ill. 2001) (dismissing motion to intervene both for failure to comply with Rule 24(c) and substantive reasons); *Deutsche Bank Nat'l Trust Co. v. Cannon*, No. 12 C 5225, 2014 WL 4724442, at *4 (N.D. Ill. Sept. 22, 2014) ("The failure to file a pleading may be considered fatal to a motion to intervene."); *Perez v. J.A.S. Granite & Tile, LLC*, No. 10 C 4150, 2013 WL 1632055, at *2 (N.D. Ill. Apr. 16, 2013) ("The failure to file a pleading is fatal to a motion to intervene."). Monitoring Analytics's motion to intervene attaches no pleading, and thus fails to comply with Rule 24(c). It should be dismissed for that reason.

It is true that courts have "discretion to overlook such a procedural deficiency under Rule 24(c)." *Perez*, 2013 WL 1632055, at *2; *see also Rebel8*, 2015 WL 6123575, at *1 (Shah, J.). But though that may be appropriate in some circumstances—as in *Rebel8*, when the intervenor sought to protect its property from a judgment creditor, and thus did not seek to plead any claim or defense, 2015 WL 6123575, at *1—it is not appropriate here, when Monitoring Analytics can participate as an amicus and has no claim or interest at stake in these proceedings.

## CONCLUSION

For the foregoing reasons, Exelon Generation Company, LLC respectfully requests that the Court deny the motion to intervene of Monitoring Analytics.

8

April 12, 2017                                              Respectfully submitted,

                                                           /s/ Matthew E. Price

Gabriel A. Fuentes                                         Matthew E. Price*
JENNER & BLOCK LLP                                         David W. DeBruin*
353 N. Clark St.                                           Zachary C. Schauf*
Chicago, IL 60654                                          William K. Dreher*
(312) 222-9350                                             JENNER & BLOCK LLP
gfuentes@jenner.com                                        1099 New York Ave. NW, Suite 900
                                                           Washington, DC 20001
                                                           (202) 639-6873
*Admitted *pro hac vice*                                   mprice@jenner.com

*Counsel for Intervenor Exelon Generation Company, LLC*