# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELECTRIC POWER SUPPLY ASSOCIATION, DYNEGY INC., EASTERN GENERATION LLC, NRG ENERGY, INC., and CALPINE CORPORATION,<br><br>          Plaintiffs,<br><br>    v.<br><br>ANTHONY M. STAR, in his official capacity as Director of the Illinois Power Agency, and BRIEN J. SHEAHAN, JOHN R. ROSALES, SADZI MARTHA OLIVA, MIGUEL DEL VALLE, and SHERINE MAYE EDWARDS, in their official capacities as Commissioners of the Illinois Commerce Commission,<br><br>          Defendants. | Case No. 1:17-cv-01164<br><br>Judge Manish S. Shah<br><br>Magistrate Judge Susan E. Cox |

**MIDCONTINENT INDEPENDENT SYSTEM OPERATOR, INC.'S BRIEF
AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Charles E. Harper (ARDC #6269908)
Adam T. Margolin (ARDC #6288386)
Q‌UARLES & B‌RADY LLP
300 North LaSalle Street, Suite 4000
Chicago, Illinois 60654
(312) 715-5000 | (312) 715-5155 (fax)
charles.harper@quarles.com
adam.margolin@quarles.com
*Attorneys for MISO*

Midcontinent Independent System Operator, Inc. ("MISO") respectfully submits this brief as *amicus curiae* in support of defendants' motion to dismiss the complaint filed by Electric Power Supply Association, Dynegy Inc., Eastern Generation, LLC, NRG Energy, Inc., and Calpine Corporation ("Plaintiffs") for failure to state a claim upon which relief can be granted.

## BACKGROUND AND INTEREST OF *AMICUS CURIAE*

This proceeding presents the Court with questions about how Illinois state policy initiatives can work together with wholesale electricity markets to ensure there are sufficient generation resources available to serve customers. In the energy industry, this concept is referred to as resource adequacy. The Midcontinent Independent System Operator, Inc. ("MISO") administers resource adequacy and market programs authorized by the Federal Energy Regulatory Commission ("FERC") under the Federal Power Act[1] and is designed to complement state initiatives like the one at issue in this case. Many questions related to the issue before the Court are currently being debated before FERC and in the MISO stakeholder community. The timing and outcome of this proceeding may prematurely limit these ongoing efforts before FERC to seek solutions through broad and diverse set of stakeholders. Accordingly, this case is prematurely before the Court and should be dismissed.

MISO is a not for-profit, member based organization. MISO ensures the reliable delivery of electricity, at the lowest cost, across high-voltage power lines in fifteen states and the Canadian province of Manitoba. MISO also conducts transmission planning and manages the buying and selling of wholesale electricity in one of the world's largest energy markets. The Energy and Operating Reserves Market includes a Day-Ahead Market, a Real-Time Market, and a Financial Transmission Rights market. These markets are operated and settled separately.

---

[1] *See* 16 U.S. Code § 824.

MISO was incorporated as a Delaware non-stock, non-profit corporation on March 2, 1998. MISO received a letter dated January 17, 2001, from the Internal Revenue Service ("IRS") determining that MISO was a tax-exempt organization as described under Section 501(c)(4) of the Internal Revenue Code of 1986, as amended on the basis of MISO primarily engaging in promoting the common good and general welfare of the people of the community.

The nonprofit, public benefit purposes of MISO, as set forth generally in its Certificate of Incorporation, Transmission Owners Agreement, and Bylaws, are to promote the social welfare by providing transmission services associated with electric energy.[2]

MISO has members that are utilities or other entities that own, operate, or control facilities for the transmission of electricity in interstate commerce or are Eligible Customers, as that term is defined in MISO's Tariff on file with FERC.[3] MISO's By-Laws outline the qualifications and admission of MISO's members.

MISO has a broad member stakeholder community reflecting the interests of the transmission owners, state regulatory authorities, independent power producers, power marketers and brokers, municipal utilities, energy cooperatives and transmission dependent utilities, public consumer advocates, environmental organizations, coordinating members, and competitive transmission developers. MISO is governed by its independent Board of Directors, and MISO's

---

[2] 61 Fed. Reg. 21,540 (1996) (hereafter the "1996 FERC Order"). Moreover, MISO provides its services in furtherance of the public policy reflected in: (i) the FERC Order No. 888; (ii) other orders of the FERC related thereto; and (iii) such orders of the FERC as may concern the organization and operation of MISO. The full title of the MISO Transmission Owners Agreement is the "Agreement of Transmission Facilities Owners to Organize The Midcontinent Independent System Operator, Inc., A Delaware Non-Stock Corporation."

[3] As a Regional Transmission Organization, MISO is responsible for administering its Open Access Transmission, Energy and Operating Reserve Markets Tariff ("Tariff") and rate schedules and is the sole the sole decision-making authority on provision of transmission service. Administration of the tariff includes: calculating available transfer capability; evaluating and approving all requests for transmission service; performing transmission system impact studies; communicating with transmission customers, and; coordinating use and administration with other transmission providers in the region.

day-to-day operations are run by its officers and employees. Importantly, the members are not charged with MISO's governance, and people who serve on the Board of Directors have no financial interest or affiliation with members of MISO or market participants.

**<u>Government Approval and History of MISO</u>**

MISO is organized and operated to meet the requirements of the 1996 FERC Order regarding Regional Transmission Operators ("RTOs") and/or Independent System Operators ("ISOs").[4]

The 1996 FERC Order sets forth principles by which an ISO would be approved by the FERC, as an ISO is a public utility subject to the jurisdiction of FERC. The 1996 FERC Order's principles for ISOs include having a structure that is fair and non-discriminatory, adhering to strict conflict of interest standards, making transmission system information publicly available, and satisfying other principles centered around providing non-discriminatory open access to the transmission grid in order to benefit electric consumers. FERC approved MISO as an ISO in 1998.[5] Subsequently, MISO was approved by FERC as the first RTO on December 20, 2001.[6] On February 1, 2002, FERC accepted MISO's Open Access Transmission Tariff to begin the

---

[4] The 1996 FERC Order explicitly encouraged the formation of ISOs based on the guidance set forth in that Order. This encouragement was part of the process of furthering competition in the electric transmission and wholesale bulk electric power system by which ISOs were charged with providing independent, open, and fair access to electricity transmission systems. Such services and transactions were completely regulated by state and federal authorities prior to the creation of ISOs.

[5] *Midwest Indep. Transmission Sys. Operator, Inc*., 84 F.E.R.C. ¶ 61,231 (1998), FERC reviewed the application and approved it by order dated September 16, 1998 (the "1998 FERC Order"), in which the FERC determined that MISO met the principles outlined in the 1996 FERC Order for ISOs, especially the independence criteria. This independence criteria is critical to ensure MISO provides the required oversight of the transmission facilities of MISO members and provides benefits to customers through the efficient and competitive transmission of electricity.

[6] *Midwest Independent Transmission System Operator, Inc.,* 97 FERC ¶ 61,326 (2001).

3

provision of regional transmission services.[7] All of these orders from FERC, issued at the time of MISO's formation and regulatory approval, demonstrate MISO's independence and social welfare purpose. Today, MISO has grown to include over 150 members.

MISO has an interest in this case because it is obligated, through its federally-approved Tariff, to assure resource adequacy outcomes that are complementary with state-based policy programs.[8] The Zero Emission Credit ("ZEC") program that was introduced as part of the Future Energy Jobs Act, and which is at issue in this case, is one such policy program. Because MISO operates under a regional market structure, any action that occurs in this proceeding may impact the broader area MISO serves, thus establishing MISO's interest in this proceeding. As an independent operator of the transmission system and regional energy markets, MISO is uniquely positioned to provide this Court with useful information regarding MISO's resource adequacy construct and how it both respects and is complementary to state policy initiatives such as the state-established ZEC program.

## ARGUMENT

The Federal Power Act vests FERC with broad authority over the rates, terms, and conditions of service for the transmission and wholesale sale of electric energy in interstate commerce.[9] Federal regulation under the Federal Power Act extends to matters that are not subject to regulation by the states.[10] FERC has carefully implemented and authorized programs that reflect this federal-state balance as required by the Federal Power Act, and which is incorporated in MISO's Tariff provisions.

---

[7] *Midwest Indep. Transmission Sys. Operator, Inc.*, 97 F.E.R.C. ¶ 61,033, at 61,177 (2001) ("Opinion No. 453"), *order on reh'g*, 98 F.E.R.C. ¶ 61,141 (2002) ("Opinion No. 453-A").

[8] MISO Tariff Module E-1, Section 68A.

[9] 16 U.S.C. § 824.

[10] 16 U.S.C. § 824(b).

While FERC has broad discretion under the Federal Power Act, it has consistently recognized the historical role of states in matters over generation facilities and associated energy policy initiatives, noting that it can fulfill its jurisdictional responsibilities while also respecting the role of states.[11] Further, FERC has recognized the role of states in implementing energy policy initiatives. FERC balances its objective of promoting economically efficient markets and efficient prices with the interest of "accommodating the ability of states to pursue other legitimate state policy objectives."[12] As the relationship between state policy initiatives and wholesale electricity markets has become a more prevalent issue in recent years, FERC has encouraged RTOs and their stakeholders to work together in addressing state policy implications in regional markets.[13]

MISO's Tariff reflects FERC's longstanding recognition of state-based authority. MISO's Tariff provisions are the product of extensive stakeholder discussions and feedback both at MISO and before FERC. These provisions reflect meaningful input from capable and knowledgeable parties representing all segments of the energy industry. MISO's Tariff, which is subject to FERC oversight, directs MISO to assure resource adequacy across its broad region in a complementary manner recognizing and accounting for approaches implemented through state-based initiatives. Specifically, MISO's resource adequacy and market mechanisms are not intended to affect, and shall not, in any way alter state actions over entities under State jurisdiction.[14]

---

[11] *California Indep. Sys. Operator Corp.*, 116 FERC ¶ 61,274 (2006) at P 1117.

[12] *NESCOE,* 142 FERC ¶ 61,108 (2013) at P35.

[13] *California Indep. Sys. Operator Corp.,* 145 FERC ¶ 61,254 (2013) at P 46.

[14] *Id.*

Therefore, the impact from this proceeding is not limited to the state of Illinois – the outcome may affect the entire 15 state region MISO serves. MISO utilizes a collaborative, region-wide approach to grid planning to manage its members' generation units and high-voltage transmission lines in a pooled manner across its service territory. Further, stakeholder processes are currently underway before FERC to establish ways to reconcile state policy initiatives with wholesale electricity markets. For the reasons discussed herein, MISO urges the Court to take these factors into consideration in addressing the outstanding motions.

**I.      MISO's Tariff complements state-based initiatives**

MISO's Tariff recognizes and accounts for the independent authority of state regulators. Specifically, MISO's resource adequacy Tariff provisions include an obligation for its resource adequacy and market processes to take account of state initiatives.[15] In accepting MISO's Tariff on resource adequacy, FERC found that MISO had met its burden of proof, as prescribed under Section 205 of the Federal Power Act, by demonstrating that its proposed rate, term or condition (in this instance, MISO's Tariff) was just and reasonable.[16]

Understanding that resource adequacy requires support from a broad spectrum of entities, MISO's Tariff includes resource adequacy and market provisions that were developed through extensive discussions with MISO states and stakeholders, including utilities, independent power producers, consumer groups, and other entities. These Tariff obligations, crafted by a diverse set of interests, and accepted by FERC, guide MISO in ensuring that long-term resource adequacy and reliability needs are met. MISO's programs and requirements <u>are complementary</u> to any

---

[15]   MISO Tariff Module E-1, Section 68A.

[16]   *Midwest Independent Transmission System Operator, Inc.,* 139 FERC ¶ 61,199 (2012). MISO's Tariff was approved consistent with the Federal Power Act under 16 U.S. Code § 824d.

state-approved mechanisms.[17] Specifically, MISO's resource adequacy and market mechanisms should not affect nor alter state actions over entities under state jurisdiction.[18]

## II. MISO has the ability integrate state policy initiatives into its programs

MISO's Tariff calls for MISO to integrate state-sponsored policies into its wholesale markets. It is MISO's role to recognize policies enacted by the states and develop the wholesale mechanisms required to assure resource adequacy in a complementary manner. This may include any unique features a state deems appropriate due to policy considerations. Because the vast majority of utilities in MISO's footprint arrange for supply resources to serve their demand well in advance of MISO's residual capacity auction, state policy programs designed to serve each state's consumer needs are common initiatives that MISO's market processes are designed to accommodate.[19] The ZEC program that was introduced as part of the Future Energy Jobs Act, and which is at issue in this case, is one such policy program.

## III. The outcome of this litigation matters for resource adequacy in MISO and, more specifically, downstate Illinois

The MISO region is experiencing an evolving portfolio of generation resources as new resources enter the footprint and existing units nearing the end of their useful life retire. The ZEC program creates the opportunity for approximately 1,100 megawatts (MW) of generation supply that can be used as a capacity resource in MISO's footprint. Maintaining an additional

---

[17] MISO Tariff Module E-1, Section 68A.

[18] *Id.*

[19] These state policies are in addition to federal policies that also seek to support various types of resources, including, for example, investment and/or production tax credits. Conversely, federal policies may influence the nature, type, and scope of state policy initiatives. Examples of state policies include renewable portfolio standards that have been adopted by states like Illinois, Iowa, Michigan, Minnesota, Missouri, and Wisconsin that may require utilities to use or procure renewable energy to account for a defined percentage of their retail electricity sales. Renewable portfolio standards are determined at the state level and differ based upon state-specific policy objectives. Differences may include eligible technologies, penalties and the mechanism by which the amount of renewable energy is being tallied.

1,100 MW in the MISO portion of the state of Illinois may not only benefit local resource adequacy needs and reliability objectives, but also the entire area MISO serves. The vast majority of capacity resources physically located in the MISO region are essentially paired with demand well in advance of the residual capacity auction. Any additional megawatts of supply are extremely valuable for states or utilities that may not otherwise have sufficient resources to serve customers.

IV. **There are currently ongoing processes and proceedings taking place before the Federal Energy Regulatory Commission**

Key elements of state policy initiatives such as the ZEC program at issue before the Court are being actively addressed by federal regulators through both administrative and policy-based processes. Several Plaintiffs to this proceeding are parties to a complaint filed under the Federal Power Act that was recently amended to discuss issues related to ZEC programs in both New York and Illinois.[20] Specifically, the complaint seeks guidance on whether market mitigation measures are necessary in competitive wholesale markets as a result of state policies in these states.[21] To date, FERC has not ruled on the complaint.

In addition to the administrative complaints, FERC is addressing matters affecting wholesale energy and capacity markets, including ZEC programs, at a two-day technical conference on May 1 and May 2, 2017.[22] The stated objective of the technical conference is to explore how competitive wholesale markets can select resources of interest to state policy

---

[20] *See Complaint Requesting Fast Track Processing*, filed by Calpine Corporation et. al., Docket No. EL16-49-000 (filed Mar. 21, 2016) and *Motion to Amend and Amendment to March 21, 2016 Complaint of Calpine Corporation, et. al. and Request for Expedited Action on Amended Complaint*, filed by the Electric Power Supply Association, et. al., Docket No. EL16-49-000 (filed Jan. 9, 2017).

[21] *Id.*

[22] *State Policies and Wholesale Markets Operated by ISO New England Inc., New York Independent System Operator, Inc., and PJM Interconnection, L.L.C.,* Supplemental Notice of Technical Conference, Docket No. AD17-11 (April 13, 2017).

8

makers while preserving regional market structures.[23] FERC is seeking to better understand state objectives in adopting policies to prioritize certain resources (or resource attributes) and explore potential solutions that reconcile competitive market frameworks with state policies.[24] The timing and outcome of this proceeding may prematurely limit these ongoing efforts before FERC to seek solutions through broad and diverse set of stakeholders.

V.  **Conclusion**

Because of MISO's interest in this proceeding, as an RTO with federally-approved Tariff requirements that complements state based initiatives, MISO has filed its amicus brief in support of the Defendants' motion to dismiss. Maintaining supply resources that may have otherwise retired absent a state policy initiative benefits not just local resource adequacy needs, but also supports regional reliability across all member states. Further, federal regulators and interested parties across all segments of the electric industry are seeking solutions to reconcile state based policy initiatives with regional wholesale markets. Those processes should be allowed to reach conclusion, since there may provide further guidance on how state policy initiatives and larger scale resource adequacy considerations work together to ensure electric consumers continue to benefit from the availability of sufficient energy resources. MISO urges the Court to take these factors into consideration in addressing the outstanding motions. Accordingly, this case is prematurely before the Court and should be dismissed.

                                             Respectfully submitted,

                                             MIDCONTINENT INDEPENDENT
                                             SYSTEM OPERATOR, INC. (MISO)

                                             By:   /s/ Charles E. Harper
                                                        One of its attorneys

---

[23]   *Id.*

[24]   *Id.*

Charles E. Harper (ARDC #6269908)
Adam T. Margolin (ARDC #6288386)
QUARLES & BRADY LLP
300 North LaSalle Street, Suite 4000
Chicago, IL 60654
(312) 715-5000 | (312) 715-5155 (fax)
charles.harper@quarles.com
adam.margolin@quarles.com

QB\45327661.2

10